UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASTE ACTION PROJECT, | CASE NO. C21-240 MJP |
| Plaintiff, | ORDER ON MOTION TO DISMISS AND MOTION FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT |
| v. | |
| SNOQUALMIE MILL VENTURES LLC, et al., | |
| Defendants. | |

This matter comes before the Court on Defendants' Motion to Dismiss (Dkt. No. 36), and Plaintiff's Motion for Leave to File a Supplemental Complaint (Dkt. No. 49). Having reviewed the Motions, the Oppositions (Dkt. Nos. 42, 50, 51, 52), the Replies (Dkt. Nos. 45, 53), the Joinders (Dkt. Nos. 37, 38, 46), the Court DENIES the Motion to Dismiss and GRANTS the Motion for Leave.

## BACKGROUND

Plaintiff Waste Action Project pursues claims under the Clean Water Act against a group Defendants who own and/or operate facilities on a decommissioned Weyerhaeuser sawmill in

1   Snoqualmie, Washington—the Mill Site. (First Amended Complaint (FAC) ¶¶ 10-18, 24 (Dkt.

2   No. 28).) Plaintiff is a non-profit entity filing suit on behalf of its members and it alleges that

3   Defendants have violated the CWA by discharging industrial wastewater without a permit from

4   the Mill Site through nearly 12,000 linear feet of human-made channels that cross the site and

5   drain into the Snoqualmie River and Borst Lake. (Id. ¶¶ 7-10, 24-34.) Plaintiff does not allege

6   that it has taken any samples of the stormwater runoff. But Plaintiff alleges that each day that

7   there is at least 0.1 inch of precipitation in Snoqualmie the legacy industrial contamination at the

8   Mill Site has the potential to be released as stormwater and Defendants' current industrial

9   activities discharge industrial wastewater. (Id. ¶¶ 24-34.) Plaintiff's pre-suit notices also identify

10  the days on which there was at least 0.1 inch of precipitation. (See, e.g., Notice of Intent to Sue,

11  at 24-84 (Dkt. No. 28-1 at 24-84).)

12          Defendants include the owners of the Mill Site and various entities operating on it.

13  Defendant Snoqualmie Mill Ventures LLC owns the Mill Site and its owner/governor is Stephen

14  Rimmer. (FAC ¶¶ 10, 12.) Rimmer also owns Defendant Dirtfish LLC, which operates a

15  racetrack and rally car driving school on the Mill Site. (Id. ¶¶ 11-12.) Plaintiff alleges that

16  Dirtfish constructed and operates a racetrack in a portion of the Mill Site "known to be

17  contaminated with hazardous substances" and that it discharges industrial wastewater "from

18  unpaved areas cleared, graded, or excavated" by Dirtfish that "is part of a larger common

19  development plan that will ultimately disturb five acres or more." (Id. ¶ 11; Notice of Intent to Sue

20  at 2 (Dkt. No. 28-1 at 2).) Plaintiff alleges that Rimmer and Snoqualmie Mill Ventures know of

21  and have control over the activities at the Mill Site associated with industrial stormwater

22  discharges at issue in this action. (FAC ¶ 12.) Defendant Brookwater Advisors, LLC and its

23  owner/governor Thomas Sroufe manage the Mill Site, and Plaintiff alleges that they have

24

1    knowledge of and control over the activities at the Mill Site that constitute industrial wastewater

2    discharges at issue in this action. (Id. ¶¶ 13-14.) Plaintiff alleges that three other entities run

3    industrial operations on portions of the Mill Site that result in industrial wastewater discharges:

4    (1) Defendant Merrill & Ring Forest Products LLC operates an industrial site related to its

5    timber business on a portion of the Mill Site (Id. ¶ 15); (2) Hos Brothers Construction, Inc.

6    operates an industrial site related its construction and mining business on a portion of the Mill

7    Site (Id. ¶ 16); and (3) Flatiron West, Inc. operates an industrial site on a portion of the Mill Site

8    related to its construction business (Id. ¶ 17.) (See FAC ¶¶ 31-34.) As required by the CWA,

9    Plaintiff served pre-suit notice letters to Defendants, the U.S. Environmental Protection Agency,

10   and the Washington Department of Ecology more than 60 days before filing its initial complaint.

11   (Id. ¶¶ 3-4 & Exs. 1-4 to FAC (Dkt. Nos. 28-1, 28-2, 28-3, 28-4).)

12        In the FAC, Plaintiff alleges that Defendants did not obtain any coverage under

13   Ecology's general National Pollutant Discharge Elimination System ("NPDES") permit to

14   discharge wastewater from the Mill Site. (FAC ¶¶ 1, 38.) But in 2015, Sroufe had applied for

15   coverage under the Ecology's Construction Stormwater General Permit for a small portion of the

16   land—4.2 acres. (Id. ¶ 39.) As alleged, the application "falsely certified that the applicant was

17   not aware of any contaminated soils present on the site or any groundwater contamination

18   located within the site boundary." (Id. ¶ 39.) But the application admitted that the site's

19   stormwater is discharged into the Snoqualmie River and Borst Lake. (Id.) Ecology granted that

20   permit, which "authorized discharges of stormwater associated with construction activity from

21   that subarea only, subject to the permit's terms and conditions." (Id. ¶ 40.) The permit did not

22   allow industrial wastewater discharge and expired on December 31, 2020. (Id. ¶¶ 40-41.)

23

24

1   Plaintiff alleges that the permit should have been renewed because the site has not been

2   stabilized such that a construction permit would not be necessary. (Id. ¶ 42.)

3     Snoqualmie Mill Ventures has applied for coverage under Ecology's general NPDES

4   permit and the Industrial Stormwater General Permit (ISGP) for 18.7 acres of the Mill Site. (Dkt.

5   No. 40-3 at 57.) Plaintiff did not make mention of this fact in the FAC, although it occurred in

6   late March 2021, before Plaintiff filed the FAC. The FAC also omits mention that Ecology

7   granted Snoqualmie Mills Ventures coverage under the ISGP. (Dkt. No. 40-3 at 57.) This latter

8   omission appears likely due to the fact that the approval occurred the same day Plaintiff filed the

9   FAC—May 5, 2021. (Compare Dkt. No. 40-3 at 57 with Dkt. No. 28.)

10     Plaintiff now seeks leave of Court to file what it calls a "supplemental" complaint, to

11   challenge what it alleges to be Snoqualmie Mill Venture's post-permit failure to implement

12   stormwater pollution control best management practices, to adopt a compliant stormwater

13   pollution prevention plan, and to collect requisite stormwater discharge samples from all

14   required locations. (Mot. for Leave at 3.) In pursuit of filing its "supplemental" complaint,

15   Plaintiff served notice to Defendant Snoqualmie Mill Ventures of its intent to sue under the

16   CWA. (Id.) The 60-day notice period expires on September 18, 2021. (Id. at 3-4.)

17   **ANALYSIS**

18   **A. Legal Standard**

19     **1. Rule 12(b)(1)**

20    Defendants' Motion to Dismiss requires the Court to first assess whether their Motion

21   asserts a facial or factual attack to subject matter jurisdiction under Rule 12(b)(1). The Court

22   concludes that the attack is facial—that is, based on the allegations in the FAC.

23

24

1    "A Rule 12(b)(1) jurisdictional attack may be facial or factual." <u>Safe Air for Everyone v.

2    Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir.

3    2000)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are

4    insufficient on their face to invoke federal jurisdiction." <u>Id.</u> And "[b]y contrast, in a factual

5    attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise

6    invoke federal jurisdiction." <u>Id.</u> "In resolving a factual attack on jurisdiction, the district court

7    may review evidence beyond the complaint without converting the motion to dismiss into a

8    motion for summary judgment." <u>Id.</u> "Once the moving party has converted the motion to dismiss

9    into a factual motion by presenting affidavits or other evidence properly brought before the

10   court, the party opposing the motion must furnish affidavits or other evidence necessary to

11   satisfy its burden of establishing subject matter jurisdiction." <u>Savage v. Glendale Union High

12   Sch.</u>, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). But "[j]urisdictional dismissals in cases premised

13   on federal-question jurisdiction are exceptional, and must satisfy the requirements specified in

14   <u>Bell v. Hood</u>, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946)." <u>Sun Valley Gas., Inc. v. Ernst

15   Enters.</u>, 711 F.2d 138, 140 (9th Cir. 1983). Under <u>Bell</u>, jurisdictional dismissals are warranted

16   "where the alleged claim under the constitution or federal statutes clearly appears to be

17   immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim

18   is wholly insubstantial and frivolous." <u>Bell</u>, 327 U.S. at 682–83.

19       Here, Defendants do not expressly state what sort of jurisdictional attack they make.

20   While Defendants append several items to their Motion to Dismiss, they rely almost exclusively

21   on facial attacks to the FAC. As such, the Court construes the Motion as presenting a facial, not

22   factual challenge to subject matter jurisdiction. In deciding the Motion, the Court accordingly

23

24

1  limits its review to the allegations in the FAC and the pre-suit notices which are incorporated by

2  reference and appended to the FAC.

3    **2.**  **Rule 12(b)(6)**

4    The Court may dismiss a complaint for "failure to state a claim upon which relief can be

5  granted." Fed. R. Civ. P. 12(b)(6). "A complaint may fail to show a right of relief either by

6  lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal

7  theory." Woods v. U.S. Bank N.A., 831 F.3d 1159, 1162 (9th Cir. 2016). In ruling on a Rule

8  12(b)(6) motion, the Court must accept all material allegations as true and construe the complaint

9  in the light most favorable to the non-movant. Wyler Summit P'Ship v. Turner Broad. Sys., Inc.,

10  135 F.3d 658, 661 (9th Cir. 1998). The complaint "must contain sufficient factual matter,

11  accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

12  U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

13  **B.**  **Clean Water Act Framework**

14    To understand the merits of Plaintiff's claims, the Court reviews the relevant elements of

15  the CWA and its regulations concerning industrial stormwater discharges and the requirements

16  for citizen suits.

17    **1.**  **Clean Water Act Protections Against Industrial Stormwater Pollution**

18    Congress enacted the Clean Water Act in 1948 to "restore and maintain the chemical,

19  physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a) (originally

20  codified as the Federal Water Pollution Control Act, 62 Stat. 1155). To meet these goals, the

21  CWA requires "individuals, corporations, and governments secure National Pollutant Discharge

22  Elimination System (NPDES) permits before discharging pollution from any point source into

23  the navigable waters of the United States." Decker v. Nw. Env'tl Def. Ctr., 568 U.S. 597, 602

24

1   (2013). "[T]he Act categorically prohibits any discharge of a pollutant from a point source

2   without a permit." Comm. To Save Mokelumne River v. E. Bay Mun. Util. Dist., 13 F.3d 305,

3   309 (9th Cir. 1993).

4        Stormwater regulation is critical to the CWA because "[s]tormwater runoff is one of the

5   most significant sources of water pollution in the nation, at times comparable to, if not greater

6   than, contamination from industrial and sewage sources." Env't Def. Ctr., Inc. v. U.S. E.P.A.,

7   344 F.3d 832, 840 (9th Cir. 2003) (citation omitted). While some stormwater runoff is exempt

8   from the NPDES permit requirement, "Congress directed the EPA to continue to require permits

9   for stormwater discharges 'associated with industrial activity.'" Decker, 568 U.S. at 603-04

10  (quoting 33 U.S.C. § 1342(p)(2)(B)). The Ninth Circuit has broadly interpreted the phrase

11  "associated with industrial activity" to require only an "association with any type of industrial

12  activity,"—there is no separate provision requiring "storm water [to] be contaminated or come

13  into direct contact with pollutants." Nat. Res. Def. Council, Inc. v. U.S. E.P.A., 966 F.2d 1292,

14  1304 (9th Cir. 1992); see also Puget Soundkeeper Alliance v. Whitley Mfg. Co., Inc., 145

15  F.Supp.3d 1054, 1057 (W.D. Wash. 2015) (collecting cases and holding that industrial

16  stormwater is itself a pollutant subject to the NPDES permitting requirement). And, as

17  Defendants concede, legacy contamination can constitute industrial stormwater subject to the

18  permitting requirements under the CWA: "If, and only if, a former industrial area has significant

19  materials which are still exposed to stormwater, is a permit required." (Def. Mot. to Dismiss at

20  19 (citing 40 C.F.R. § 122.26(b)(14)).

21       EPA has also defined "stormwater associated with industrial activities." The lengthy

22  regulations broadly define "discharges associated with industrial activity" to mean "the discharge

23  from any conveyance that is used for collecting and conveying storm water and that is directly

24

related to manufacturing, processing or raw materials storage areas at an industrial plant." 40

C.F.R. § 122.26(b)(14). This includes, "but is not limited to, storm water discharges from

industrial plant yards; immediate access roads …; refuse sites; … shipping and receiving areas;

… storage areas …; and areas where industrial activity has taken place in the past and significant

materials remain and are exposed to storm water." Id. "[A]reas located on plant lands separate

from the plant's industrial activities, such as office buildings and accompanying parking lots" are

excluded, only if "the drainage from the excluded areas is not mixed with storm water drained"

from areas specifically included in the industrial stormwater definition. Id.

"In Washington, stormwater discharge from industrial facilities is generally permitted

under the state's Industrial Stormwater General Permit ('ISGP')." Whitley, 145 F. Supp. 3d at

1056. "The ISGP provides standards for prevention, control, and treatment of discharges,

imposes sampling and reporting requirements, and specifies escalating corrective actions if a

facility's discharge exceeds certain benchmark levels of contaminants." Id.

### 2. Citizen Suits under the CWA

"The Clean Water Act explicitly allows private citizens to bring enforcement actions

against any person alleged to be in violation of federal pollution control requirements." Ass'n to

Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc., 299 F.3d 1007, 1012 (9th Cir.

2002). "To establish a violation of the Act's NPDES requirements, a plaintiff must prove that

defendants (1) discharged, i.e., added (2) a pollutant (3) to navigable waters (4) from (5) a point

source." Mokelumne, 13 F.3d at 308. There is no private right of action to enforce the mere

failure to obtain a NPDES permit. See Whitley, 145 F. Supp. 3d at 1057. But the CWA allows

citizen suits asserting that the defendant has discharged a pollutant into navigable waters from a

point source. See Taylor, 299 F.3d at 1012.

1    "The Clean Water Act requires citizen plaintiffs to notify alleged violators of their intent

2    to sue at least sixty days before filing a complaint." Waterkeepers N. California v. AG Indus.

3    Mfg., Inc., 375 F.3d 913, 916 (9th Cir. 2004) (citing 33 U.S.C. § 1365(b)(1)(A)). The letter must

4    contain "sufficient information to permit the recipient to identify the specific standard, limitation,

5    or order alleged to have been violated, the activity alleged to constitute a violation, ... [and] the

6    date or dates of such violation." 40 C.F.R. § 135.3(a). "Although the Act's notice requirement is

7    strictly construed, plaintiffs are not required to list every specific aspect or detail of every alleged

8    violation." Waterkeepers, 375 F.3d at 917 (citation and quotation omitted). "Notice is sufficient

9    if it is specific enough to give the accused company the opportunity to correct the problem." San

10   Francisco BayKeeper, Inc. v. Tosco Corp., 309 F.3d 1153, 1158 (9th Cir. 2002) (citation and

11   quotation omitted). This requires only "reasonable specificity." See id. "A reviewing court may

12   examine both the notice itself and the behavior of its recipients to determine whether they

13   understood or reasonably should have understood the alleged violations." Klamath-Siskiyou

14   Wildlands Ctr. v. MacWhorter, 797 F.3d 645, 651 (9th Cir. 2015).

15   **C.    Plaintiff has Stated a Claim under the Clean Water Act**

16          Having reviewed the FAC and the pre-suit notices, the Court finds that Plaintiff has

17   plausibly stated a claim for relief.

18          First, Plaintiff has identified the discharge of a "pollutant" covered by the CWA. The

19   FAC and pre-suit notices specify that the stormwater at issue is "associated with industrial

20   activity." See 40 C.F.R. § 122.26(b)(14). Plaintiff adequately alleges that Defendants Hos

21   Brothers, M&R, and Flatiron's timber, mining, and/or construction activities fall within the

22   regulatory definitions of 40 C.F.R. § 122.26(b)(14). (FAC ¶¶ 31-33.) Plaintiff has also plausibly

23   alleged that Dirtfish's activities fall within 40 C.F.R. § 122.26(b)(14)(x), given the allegations in

24

1    the notice that Dirtfish's construction activities are part of a common plan of development that

2    will ultimately disturb more than five acres. (Dkt. No. 28-1 at 2-3.) The discharges of wastewater

3    associated with these industrial activities qualify as "pollutants" without further allegations as to

4    the specific composition of the industrial stormwater. See Nat. Res. Def. Council, 966 F.2d at

5    1304; Whitley, 145 F. Supp. 3d at 1057. And while Plaintiff has not measured specific

6    discharges, it has alleged that discharges from Defendants' industrial activities occur when there

7    is at least 0.1 inch of precipitation and it identifies the days on which the measured precipitation

8    has met or exceeded this threshold. (See FAC ¶ 34; see, e.g., Dkt. No. 28-1 at 24-84.) Plaintiff

9    has also identified various legacy pollutants that exist on the site that are likely to be contained in

10   the stormwater discharged at the same precipitation levels. (FAC ¶¶ 24-34; see Dkt. No. 28-2 at

11   2, 10 – 17; Dkt. No. 28-3 at 2, 10 – 17; Dkt. No 28-4 at 2, 10 - 17.) As Defendants concede,

12   those sorts of discharges are subject to the NPDES permit requirements. (Def. Mot. to Dismiss at

13   19.) These allegations satisfy the requirement to show discharges of pollutants from industrial

14   wastewater that require permit coverage.

15       Defendants incorrectly argue that industrial wastewater is not a pollutant, citing for

16   support the decision in Ecological Rights Found. v. Pac. Gas & Elec. Co., 713 F.3d 502 (9th Cir.

17   2013). But in that case, among other reasons, the plaintiff failed to state a claim because the

18   discharge of chemicals from utility poles did not fit within the regulatory definition of

19   "associated with industrial activity." Id. at 511-14. The opinion does not announce a general rule

20   that industrial wastewater is not a pollutant. And the case also presented a unique factual

21   scenario which strained the application of the term "associated with industrial activities" to

22   utility poles. That is a far cry from the factual allegations here, where Plaintiff has sufficiently

23   alleged that the industrial activities and legacy industrial contamination, unlike utility poles, fits

24

ORDER ON MOTION TO DISMISS AND MOTION FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT
- 10

1    well within the regulatory provisions for stormwater associated with industrial activities. See 40

2    C.F.R. § 122.26(b)(14). Defendants' argument also contradicts their own concession that legacy

3    industrial contamination can be subject to the permitting requirements for industrial wastewater

4    under 40 C.F.R. § 122.26(b)(14). (See Def. Mot. to Dismiss at 18.) Defendants have failed to

5    identify any basis for the Court to conclude that the alleged discharges of industrial wastewater

6    fall outside of the CWA's permitting requirements.

7         Second, Plaintiff has identified that the discharges of industrial wastewater occur through

8    point sources to navigable waters. The pre-suit notices and FAC explain that the U.S. Army

9    Corps of Engineers has found the network of drainage and channels to be streams and wetlands

10   of the United States, and Plaintiff alleges that this network is also a point source that drains into

11   the Snoqualmie River and Borst Lake. (FAC ¶¶ 34-37; see Dkt. Nos. 28-1, 28-2, 28-3, 28-4.)

12   These allegations sufficiently describe the features and activities that cause industrial stormwater

13   discharges to occur through point sources into navigable waters. Mokelumne, 13 F.3d at 308

14        Third, Plaintiff's pre-suit notices were adequate to inform Defendants of the alleged

15   CWA violations. The notices are detailed as to each defendant and they explain the basis for the

16   claims. And the notices' adequacy is evident in Defendants' post-notice decision to apply for

17   stormwater coverage for a portion of the Mill Site. See Klamath-Sikskiyou, 797 F.3d at 651.

18        Defendants make two additional arguments the Court briefly addresses. First, Defendants

19   argue that Plaintiff is improperly attacking events more than 5 years old. But this ignores the

20   FAC's allegations that are limited to current activities and discharges within 5 years of the filing

21   of the initial complaint. Second, Defendants argue that the construction activities Dirtfish has

22   engaged in have now ceased, making the claim moot. Given that Defendants' Motion presents a

23   facial challenge, the Court's review is limited to the pleadings. Safe Air, 373 F.3d at 1039.

24

Defendants' argument improperly asks the Court to look beyond the allegations in the FAC and resolve disputed factual issues that also do not concern subject matter jurisdiction. This argument is premature and inappropriate at this stage of the proceedings.

Having considered Defendants' arguments and the pleadings, the Court DENIES the Motion to Dismiss.

**D.      Motion for Leave**

In order to assert new claims against Snoqualmie Venture Mills related to the ISGP permit it has now obtained, Plaintiff asks the Court for three forms of relief: (1) leave to file an amended pleading after the deadline; (2) leave to file a "supplemental" complaint; and (3) a new case schedule to be proposed by the Parties. The Court finds the requested relief appropriate and GRANTS the Motion.

**1.      Relief from the Amended Pleading Deadline**

Plaintiff bears the burden of demonstrating good cause under Rule 16(b) to obtain relief from the amended pleading deadline which expired on June 21, 2021. See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992).

To obtain an amendment to a scheduling order, the movant must demonstrate good cause. See Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." Johnson, 975 F.2d at 609. "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" Id. (quoting Fed. R. Civ. P. 16 Adv. Comm. Notes (1983 amendment)). "If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted." Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002). "Prejudice to the non-moving party, while not required under Rule 16(b)'s good cause

1    assessment, can serve as an additional reason to deny a motion[.]" Coleman v. Quaker Oats Co.,

2    232 F.3d 1271, 1294 (9th Cir. 2000).

3         Plaintiff has demonstrated good cause to modify the case schedule to allow an extension

4    to the amended pleading deadline. Plaintiff argues that the primary thrust of its additional claims

5    is that the stormwater pollution prevention plan (SWPPP) does not comply with the ISGP permit.

6    The SWPPP was prepared on June 4, 2021, 17 days before the amended pleading deadline.

7    According to counsel for Plaintiff, it did not receive a copy of the SWPPP despite Defendants'

8    promise to provide it upon its completion. (See Declaration of Marc Zemel ¶ 5 (Dkt. Nos. 54, 55-

9    2).) Defendants did not provide a copy until July 15, 2021, two weeks after Plaintiff separately

10   demanded a copy. (Id.) Five days after receipt, Plaintiff then served its 60-day notice of intent to

11   sue then moved for leave to file a new complaint on August 4, 2021. Defendants suggest that

12   Plaintiff should have acted faster to obtain a copy of the SWPPP, but they do not aver that the

13   document was publicly-available, and they do not explain why they did not provided it to

14   Plaintiff as promised. The Court finds that the delay in seeking to amend the complaint is not

15   unreasonable and that Defendants have failed to show a lack of diligence. And Defendants have

16   not identified any prejudice that might flow from altering the amended pleading deadline. The

17   Court therefore GRANTS Plaintiff's request to amend the amended pleading deadline.

18        **2.    Leave to File an Amended Pleading**

19        Under Rule 15(a)(2), leave to amend "shall be freely given when justice so requires."

20   "This policy is 'to be applied with extreme liberality.'" Eminence Cap., LLC v. Aspeon, Inc.,

21   316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244

22   F.3d 708, 712 (9th Cir. 2001)). The Court should grant leave "[i]n the absence of any apparent or

23   declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant,

24

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962). But "[n]ot all factors merit equal weight"—"[p]rejudice is the touchstone of the inquiry under rule 15(a)." Eminence, 316 F.3d at 1052 (citation and quotation omitted). "Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Id.

All of the Foman factors support amendment. First, as the Court has already discussed above, there is no evidence of undue delay. Second, there is no evidence of bad faith. Third, Defendants have failed to identify any prejudice if the amended pleading is permitted. As Plaintiff notes, it could simply file a new complaint against Snoqualmie Mill Venture, meaning that Snoqualmie Mill Venture faces no specific prejudice from having these new allegations addressed in this ongoing matter rather than a new proceeding. The Court agrees. Allowing the amendment will also avoid any unnecessary burden on the Court to wade through any dispute over consolidation. Fourth, Defendants have not convinced the Court that the proposed amendment is futile. Defendants are correct that an amended pleading cannot be filed before September 18, 2021—anything earlier would violate the jurisdictional requirement of the 60-day pre-suit notice. To address this legitimate concern, the Court will allow Plaintiff to file a second amended complaint only after the expiration of the 60-day notice and only after Plaintiff considers any responses to the notices. Defendants also argue that an amended complaint would be futile given the arguments raised in its Motion to Dismiss. But as explained above, the Court rejects those arguments and finds the initial claims are adequately pleaded. The Court will, of course, address any new arguments Defendants may pursue in attacking the new allegations against Snoqualmie Mill Ventures should it seek dismissal of the new claims contained in the

1  second amended complaint. Having considered the <u>Foman</u> factors, the Court GRANTS the

2  request to file a second amended complaint, but only after the expiration of the 60-day notice and

3  only after Plaintiff considers any responses to the notices.

4         **3.**       **New Case Schedule**

5         The Court also agrees with Plaintiff that the Parties should meet and confer to discuss a

6  new case schedule in light of this Order. While the Court set a shorter case schedule than the

7  Parties proposed, the developments presented by Plaintiff's Motion to Amend require a re-

8  evaluation of the current case schedule. The Court therefore ORDERS the Parties to meet and

9  confer within 7 days of entry of this Order to discuss what changes they wish to propose to the

10  current case schedule and trial date. Within 14 days of entry of this Order, the Parties must file a

11  joint status report to provide the Court with their respective positions as to the case schedule and

12  trial date. The Court encourages the Parties to work cooperatively to propose a new schedule.

13                                                **CONCLUSION**

14         Plaintiff's FAC presents sufficient allegations that Defendants have violated the CWA

15  through unpermitted discharges of industrial stormwater into the navigable waters of the United

16  States. The Court remains unconvinced by any of Defendants' arguments that dismissal is

17  appropriate, and it DENIES the Motion to Dismiss.

18         The Court agrees with Plaintiff that it should be permitted to amend its complaint to add

19  its allegations concerning the newly-obtained permit and the SWPPP. The Court finds good

20  cause to extend the amended pleading deadline under Rule 16. And the Court finds that the

21  proposed amended complaint conforms to the considerations of Rule 15 and <u>Foman</u>. The Court

22  therefore GRANTS the Motion for Leave to Amend. Plaintiff shall be permitted to file a second

23  amended complaint after expiration of the 60-day notice period. The Court also ORDERS the

24

1   Parties to meet and confer within 7 days of entry of this Order and to file a joint status report

2   within 14 days of entry of this Order to provide their respective positions on whether the Court

3   should alter any case deadlines and the trial date.

4          The clerk is ordered to provide copies of this order to all counsel.

5          Dated September 21, 2021.

6

7                                               Marsha J. Pechman
                                                United States Senior District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON MOTION TO DISMISS AND MOTION FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT
- 16