HON. MARSHA J. PECHMAN

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASTE ACTION PROJECT, | ) |
| | ) No. 2:21-cv-00240-MJP |
| Plaintiff, | ) |
| v. | ) CONSENT DECREE (proposed) |
| | ) |
| SNOQUALMIE MILL VENTURES LLC; | ) |
| STEPHEN RIMMER; BROOKWATER | ) |
| ADVISORS LLC; THOMAS SROUFE; | ) |
| DIRTFISH LLC; MERRILL & RING | ) |
| FOREST PRODUCTS L.P.; HOS | ) |
| BROTHERS CONSTRUCTION INC.; | ) |
| FLATIRON WEST, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## I.  STIPULATIONS

Waste Action Project ("WAP") sent a 60-day notice of intent to sue letter to Snoqualmie

Mill Ventures LLC ("SMV"), Stephen Rimmer ("Rimmer"), Brookwater Advisors LLC

("Brookwater"), Thomas Sroufe ("Sroufe"), Dirtfish LLC ("DirtFish"), Merrill & Ring Forest

Products L.P. ("Merrill & Ring"), Merrill & Ring, Inc., Hos Brothers Construction Inc. ("Hos

[PROPOSED] CONSENT DECREE
No. 2:21-cv-00240-MJP
1

SMITH & LOWNEY, PLLC
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

1   Bros."), Flatiron West, Inc. ("Flatiron"), and Flatiron Constructors, Inc. on or about November 30,

2   2020, and filed a complaint against those parties on February 26, 2021, alleging violations of the

3   Clean Water Act, 33 U.S.C. § 1251 *et seq.*, relating to alleged discharges of stormwater from

4   approximately 261 acres of property owned by SMV located in Snoqualmie, Washington

5   (the "Property") and seeking declaratory and injunctive relief, civil penalties, and attorneys' fees

6   and costs.

7        WAP sent a 60-day notice of intent to sue letter to North Fork Enterprises Littlejohn, Inc.

8   ("North Fork") on or about February 26, 2021, and filed an amended complaint on May 5, 2021,

9   naming North Fork as a defendant in this action.

10        WAP dismissed with prejudice North Fork and Merrill & Ring Inc. from this action on June

11   4, 2021, and dismissed with prejudice Flatiron Constructors, Inc. from this action on June 7, 2021.

12        WAP sent a supplemental 60-day notice of intent to sue letter to SMV on or about

13   July 20, 2021, and filed a second amended complaint on September 30, 2021, alleging violations

14   of National Pollutant Discharge Elimination System Permit No. WAR310172 (the "NPDES

15   permit"), which applies to about 21 acres in the northwest portion of the Property where Defendants

16   Hos Bros., Flatiron, and Merrill & Ring operate (the "Industrial Area").

17        Defendants deny all claims and allegations asserted by WAP in its 60-day notice letters and

18   its original and amended complaints.

19        WAP has separately settled its claims against Hos Bros. A copy of the Hos Bros. settlement

20   is attached as <u>Exhibit A</u> to this Consent Decree.

21        WAP has separately settled its claims against Flatiron. A copy of the Flatiron settlement is

22   attached as <u>Exhibit B</u> to this Consent Decree.

23

[PROPOSED] CONSENT DECREE
No. 2:21-cv-00240-MJP
2

SMITH & LOWNEY, PLLC
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

1    WAP and Defendants agree that settlement of these matters is in the best interest of the

2  parties and the public, and that entry of this Consent Decree is the most appropriate means of

3  resolving this action.

4    WAP and the Defendants stipulate to the entry of this Consent Decree without trial,

5  adjudication, or admission of any issues of fact or law regarding WAP's claims or allegations set

6  forth in its 60-day notice letters and its original and amended complaints.

7    DATED this 1st day of August, 2022.

8

9  VERIS LAW GROUP PLLC                        SMITH & LOWNEY, PLLC

10 By s/ Howard F. Jensen                       By s/ Richard A. Smith
   Howard F. Jensen, WSBA #25144                Richard A. Smith, WSBA #21788
11 By s/ Hannah M. Solomon                      By s/ Marc Zemel
   Hannah M. Solomon, WSBA #56474               Marc Zemel, WSBA #44325
12 *Attorneys for Snoqualmie Mill Ventures LLC,* *Attorneys for Waste Action Project*
   *Stephen Rimmer, Brookwater Advisors LLC,*
13 *Thomas Sroufe, Dirtfish LLC, and Merrill &*
   *Ring Forest Products L.P.*

14 HAYNES AND BOONE, LLP                        BUCHALTER

15 By s/ John D. Fognani                        By s/ Jeffrey G. Frank
   John D. Fognani, *pro hac vice*              Jeffrey G. Frank, WSBA #16287
16 By s/ Kathleen M. Repko                      By s/ David C. Spellman
   Kathleen M. Repko, *pro hac vice*            David C. Spellman, WSBA #15884
17 *Attorneys for Flatiron West, Inc.*          By s/ Jennifer R. Oswald
                                                Jennifer R. Oswald, WSBA #43253
18 GROFF MURPHY PLLC                            *Attorneys for Hos Brothers Construction, Inc.*

19 By s/ Michael P. Grace
   Michael P. Grace, WSBA No. 26091
20 By s/ Emily A. Yoshiwara
   Emily A. Yoshiwara, WSBA No. 54648
21 *Attorneys for Flatiron West, Inc.*

22

23

   [PROPOSED] CONSENT DECREE                    SMITH & LOWNEY, PLLC
   No. 2:21-cv-00240-MJP                        2317 EAST JOHN ST.
   3                                            SEATTLE, WASHINGTON 98112
                                                (206) 860-2883

1

SNOQUALMIE MILL VENTURES LLC

2

3    By _____

4    Stephen Rimmer
     Member

5    MERRILL & RING FOREST PRODUCTS L.P.

6

7    By _____
     David Stroble
     President

8    STEPHEN RIMMER

9

10

11   BROOKWATER ADVISORS LLC

12

13   By _____
     Thomas Sroufe
     Managing Member

14
     HOS BROS CONSTRUCTION, INC.

15

16   By _____
     John Caunt
     President

17

WASTE ACTION PROJECT

By _____
Greg Wingard
Executive Director of Waste Action Project

DIRTFISH LLC

By _____
Stephen Rimmer
Member

THOMAS SROUFE

_____

FLATIRON WEST, INC.

By _____
Dave Horn
VP District Manager

By _____
Neal Reagan
VP Division Finance

18

19

20                        **II. ORDER AND DECREE**

21        THIS MATTER came before the Court upon the Parties' Joint Motion for Entry of Consent

22   Decree and the foregoing Stipulations of the parties. Having considered the Stipulations and the

23   promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

[PROPOSED] CONSENT DECREE
No. 2:21-cv-00240-MJP
4

SMITH & LOWNEY, PLLC
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

SNOQUALMIE MILL VENTURES LLC

By_____
   Stephen Rimmer
   Member

MERRILL & RING FOREST PRODUCTS L.P.

By_____
   David Stroble
   President

STEPHEN RIMMER

_____

BROOKWATER ADVISORS LLC

By_____
   Thomas Sroufe
   Managing Member

HOS BROS CONSTRUCTION, INC.

By_____
   John Caunt
   President

WASTE ACTION PROJECT

By _Greg Wingard_  8/2/2022
   Greg Wingard
   Executive Director of Waste Action Project

DIRTFISH LLC

By_____
   Stephen Rimmer
   Member

THOMAS SROUFE

_____

FLATIRON WEST, INC.

By_____
   Dave Horn
   VP District Manager

By_____
   Neal Reagan
   VP Division Finance

## II. ORDER AND DECREE

THIS MATTER came before the Court upon the Parties' Joint Motion for Entry of Consent Decree and the foregoing Stipulations of the parties. Having considered the Stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

[PROPOSED] CONSENT DECREE
No. 2:21-cv-00240-MJP
4

SMITH & LOWNEY, PLLC
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

SNOQUALMIE MILL VENTURES LLC

By_____
    Stephen Rimmer
    Member

MERRILL & RING FOREST PRODUCTS L.P.

By_____
    David Stroble
    President

STEPHEN RIMMER

_____

BROOKWATER ADVISORS LLC

By _____
    Thomas Sroufe
    Managing Member

HOS BROS CONSTRUCTION, INC.

By _____
    John Caunt
    President

WASTE ACTION PROJECT

By _____
    Greg Wingard
    Executive Director of Waste Action Project

DIRTFISH LLC

By _____
    Stephen Rimmer
    Member

THOMAS SROUFE

_____

FLATIRON WEST, INC.

By _____
    Dave Horn
    VP District Manager

By _____
    Neal Reagan
    VP Division Finance

## II. ORDER AND DECREE

THIS MATTER came before the Court upon the Parties' Joint Motion for Entry of Consent Decree and the foregoing Stipulations of the parties. Having considered the Stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

[PROPOSED] CONSENT DECREE
No. 2:21-cv-00240-MJP
4

SMITH & LOWNEY, PLLC
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

1

SNOQUALMIE MILL VENTURES LLC                    WASTE ACTION PROJECT

2

3    By_____              By_____
         Stephen Rimmer                              Greg Wingard
4        Member                                      Executive Director of Waste Action Project

5    MERRILL & RING FOREST PRODUCTS L.P.        DIRTFISH LLC

6
     By_____              By_____
7        David Stroble                              Stephen Rimmer
         President                                  Member
8
     STEPHEN RIMMER                             THOMAS SROUFE
9

10   _____              _____

11   BROOKWATER ADVISORS LLC                   FLATIRON WEST, INC.

12
     By_____              By_____
13       Thomas Sroufe                              Dave Horn
         Managing Member                            VP District Manager
14
     HOS BROS CONSTRUCTION, INC.             By_____
15                                                  Neal Reagan
                                                    VP Division Finance
16   By_____
         John Caunt
17       President

18

19                          **II. ORDER AND DECREE**

20        THIS MATTER came before the Court upon the Parties' Joint Motion for Entry of Consent

21   Decree and the foregoing Stipulations of the parties. Having considered the Stipulations and the

22   promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

23

     [PROPOSED] CONSENT DECREE                    SMITH & LOWNEY, PLLC
     No. 2:21-cv-00240-MJP                          2317 EAST JOHN ST.
     4                                          SEATTLE, WASHINGTON 98112
                                                      (206) 860-2883

1

2

SNOQUALMIE MILL VENTURES LLC

WASTE ACTION PROJECT

3

By_____
   Stephen Rimmer

By _____
   Greg Wingard

4

   Member

   Executive Director of Waste Action Project

5

MERRILL & RING FOREST PRODUCTS L.P.

DIRTFISH LLC

6

7

By _____
   David Stroble

By _____
   Stephen Rimmer

   President

   Member

8

STEPHEN RIMMER

THOMAS SROUFE

9

10

_____

_____

11

BROOKWATER ADVISORS LLC

FLATIRON WEST, INC.

12

13

By _____
   Thomas Sroufe

By_____
   Dave Horn

   Managing Member

   VP District Manager

14

HOS BROS CONSTRUCTION, INC.

By _____
   Neal Reagan

15

   VP Division Finance

16

By _____
   John Caunt

17

   President

18

19

## II. ORDER AND DECREE

20

THIS MATTER came before the Court upon the Parties' Joint Motion for Entry of Consent

21

Decree and the foregoing Stipulations of the parties. Having considered the Stipulations and the

22

promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

23

[PROPOSED] CONSENT DECREE
No. 2:21-cv-00240-MJP
4

SNOQUALMIE MILL VENTURES LLC

By_____
   Stephen Rimmer
   Member

MERRILL & RING FOREST PRODUCTS L.P.


By_____
   David Stroble
   President

STEPHEN RIMMER


_____


BROOKWATER ADVISORS LLC


By_____
   Thomas Sroufe
   Managing Member

HOS BROS CONSTRUCTION, INC.

By_____
   John Caunt
   President

WASTE ACTION PROJECT

By_____
   Greg Wingard
   Executive Director of Waste Action Project

DIRTFISH LLC


By_____
   Stephen Rimmer
   Member

THOMAS SROUFE


_____


FLATIRON WEST, INC.


By_____
   Dave Horn
   VP District Manager

By_____
   Neal Reagan
   VP Division Finance

## II. ORDER AND DECREE

THIS MATTER came before the Court upon the Parties' Joint Motion for Entry of Consent Decree and the foregoing Stipulations of the parties. Having considered the Stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

[PROPOSED] CONSENT DECREE
No. 2:21-cv-00240-MJP
4

1       1.      This Court has jurisdiction over the parties and subject matter of this action.

2       2.      Each signatory for the parties certifies for that party that he or she is authorized to

3   enter into the agreement set forth herein.

4       3.      This Consent Decree applies to and binds the parties and their successors and

5   assigns.

6       4.      The requirements of this Consent Decree and any injunctive relief ordered

7   within applies to: (1) the operation, oversight, or both by Defendants SMV and Merrill & Ring

8   of activities within the Industrial Area that is subject to the NPDES permit; and (2) the

9   operation, oversight, or both by Defendants SMV and DirtFish of certain measures to reduce

10  the turbidity of stormwater that flows from roads used by DirtFish for rally driving.

11      5.      This Consent Decree is a full and complete settlement and release of all claims

12  asserted in the original and amended complaints and the 60-day notice letters and all other

13  claims known or unknown existing as of the date of entry of the Consent Decree that were pled

14  in the complaints, or that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-

15  1387, arising from Defendants' ownership of or operations at the Property and existing

16  conditions at the Property. These claims are released and dismissed with prejudice.

17  Enforcement of this Consent Decree is WAP's exclusive remedy for any violation of its terms.

18  Neither WAP nor any of its representatives will aid, assist, or encourage any others to file an

19  action based upon the claims that were asserted in this action. No party will issue a press release

20  or attempt to achieve or obtain media coverage to publicize settlement of this action or the terms

21  of this Consent Decree.

22      6.      This Consent Decree is a settlement of disputed facts and law. It is not an admission

23

[PROPOSED] CONSENT DECREE
No. 2:21-cv-00240-MJP
5

SMITH & LOWNEY, PLLC
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

1    or adjudication regarding any allegations by WAP in this case or of any fact or conclusion of law

2    related to those allegations, nor evidence of any wrongdoing or misconduct on the part of any of

3    the Defendants.

4          7.      SMV agrees to the following terms and conditions:

5                  a.      SMV will comply fully with all conditions of the NPDES permit and any

6    successor, modified, or replacement permit authorizing discharges of stormwater associated

7    with industrial activity at the Industrial Area. Nothing herein shall restrict or impede the

8    primary jurisdiction and enforcement authority of the Washington State Department of

9    Ecology ("Ecology") under the NPDES permit.

10                 b.      For a period of two (2) years after entry of this Consent Decree, SMV will,

11   on a quarterly basis, electronically forward to WAP and all parties hereto copies of all

12   reports, plans, and substantive communications to and/or from Ecology related to the

13   NPDES permit or stormwater discharges from the Industrial Area covered by the NPDES

14   permit.

15                 c.      SMV will take the following measures, maintain them, and amend the

16   stormwater pollution prevention plan ("SWPPP") required by the NPDES permit to describe

17   these measures. Within ten (10) days after amending the SWPPP, SMV will provide WAP

18   and the parties hereto with a copy of the amended SWPPP.

19                        i.      Within sixty (60) days after the first significant rain event after

20                 entry of this Consent Decree, SMV, with the assistance of Farallon Consulting

21                 L.L.C. (the "stormwater consultant"), will evaluate stormwater flows in the Hos

22                 Bros. operational area to determine whether stormwater flows off the Industrial

23

[PROPOSED] CONSENT DECREE
No. 2:21-cv-00240-MJP
6

SMITH & LOWNEY, PLLC
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

1   Area to the northwest to waters of the state. If it is determined that stormwater

2   flows off the Industrial Area in this area, then the stormwater consultant will

3   evaluate whether, in accordance with the terms of the NPDES permit, the

4   stormwater runoff should be addressed through best management practices

5   ("BMPs") or other reasonable measures. SMV will implement any BMPs or

6   other reasonable measures recommended by the stormwater consultant.

7   ii.   Within sixty (60) days after the first significant rain event after

8   entry of this Consent Decree, SMV, with the assistance of the stormwater

9   consultant, will evaluate whether stormwater flows off the Industrial Area to the

10   south (into the DirtFish operational area). If it is determined that stormwater

11   flows off the Industrial Area in this area, then the stormwater consultant will

12   evaluate whether, in accordance with the terms of the NPDES permit, the

13   stormwater runoff should be addressed through BMPs or other reasonable

14   measures. SMV will implement any BMPs or other reasonable measures

15   recommended by the stormwater consultant.

16   iii.   SMV may substitute another qualified stormwater consulting

17   firm or professional for Farallon Consulting L.L.C. after receiving WAP's

18   consent, which will not be unreasonably withheld, conditioned, or delayed.

19   iv.   For a period of twelve (12) months after entry of this Consent

20   Decree, SMV will collect, analyze and report, consistent with the requirements

21   of the NPDES permit, samples of stormwater discharges from the monitoring

22   locations designated in the SWPPP in the manner required by the NPDES permit

23

[PROPOSED] CONSENT DECREE
No. 2:21-cv-00240-MJP
7

SMITH & LOWNEY, PLLC
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

1    on a monthly basis rather than the quarterly basis required by the NPDES permit.

2    Samples are not required during months when there is no discharge due to a lack

3    of precipitation.

4        d.    SMV, with the assistance of the stormwater consultant, will decommission

5    the catch basins within the Industrial Area covered by the NPDES permit with concrete or

6    controlled density fill and direct the runoff into a new pretreatment manhole that will

7    overflow into a bioretention and infiltration swale and/or pond system resembling the

8    conceptual plan described in Section 2.5.4 of the SWPPP dated September 20, 2021. This

9    work will be completed by December 31, 2022.

10       8.    SMV also agrees to support the establishment of a site-specific citizens advisory

11   committee and its funding by Ecology for the forthcoming Model Toxics Control Act process to

12   address legacy pollution concerns at the Property. This support will be manifested through public

13   statements and communications to Ecology as appropriate.

14       9.    Merrill & Ring will use commercially reasonable efforts to implement the BMPs

15   described in the SWPPP under the NPDES permit that apply to its operations within the

16   Industrial Area and will cooperate with SMV's reasonable requests to assist in attainment of

17   compliance with the terms of the NPDES permit and any successor or amended NPDES permit.

18   Hos Bros. and Flatiron have agreed to abide by substantially similar conditions in their separate

19   executed settlement agreements.

20       10.    For a period of five (5) years after entry of this Consent Decree, or until DirtFish

21   ceases rally driving at the Property, whichever occurs first, SMV, with the assistance of the

22   stormwater consultant, will develop and oversee implementation of appropriate measures to

23

[PROPOSED] CONSENT DECREE
No. 2:21-cv-00240-MJP
8

SMITH & LOWNEY, PLLC
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

1 reduce the turbidity of stormwater run-off from roads used by DirtFish for rally driving. The

2 measures selected by the stormwater consultant will be adequate to minimize turbidity in

3 stormwater run-off from roads used by DirtFish for rally driving to the extent practicable. The

4 stormwater consultant will identify individuals who will implement and maintain each measure

5 and provide instructions for these tasks. Within sixty (60) days after entry of this Consent

6 Decree, SMV will provide WAP with a plan describing the proposed measures for review and

7 comment. The stormwater consultant will consider WAP's comments before finalizing the plan.

8 The stormwater consultant will visit the Property to inspect and maintain the measures no less

9 frequently than once every two (2) months. The stormwater consultant will modify the measures

10 as necessary, when necessary. A copy of documents reflecting any modified measures will be

11 promptly forwarded to WAP. SMV, with the assistance of the stormwater consultant, will also

12 develop and oversee implementation of appropriate measures to manage water generated from

13 rinsing of DirtFish rally cars, consistent with the provisions of Ecology's Best Management

14 Practices Manual for Vehicle and Equipment Washwater Discharges, Pub. No. WQ-R-95-056

15 (Rev. Nov. 2012). Nothing herein shall imply that DirtFish requires a NPDES permit.

16     11.    Within thirty (30) days after entry of this Consent Decree, SMV will pay $40,000

17 (FORTY THOUSAND DOLLARS) and Merrill & Ring will pay $10,000 (TEN THOUSAND

18 DOLLARS) to Wild Fish Conservancy for projects to address impairments to, and contribute to the

19 improvement of, the water and/or sediment quality of the Snoqualmie River watershed, as described

20 in Exhibit C to this Consent Decree. The check will be made to the order of Wild Fish Conservancy

21 and delivered to:

22

23

[PROPOSED] CONSENT DECREE
No. 2:21-cv-00240-MJP
9

SMITH & LOWNEY, PLLC
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

1   Wild Fish Conservancy
    15629 Main St. NE
2   Duvall, WA 98019

3   Payment will include the following reference in a cover letter or on the check: "Consent Decree,

4   Waste Action Project v. Snoqualmie Mill Ventures, et al., No. 2:21-cv-00240-MJP." A copy of the

5   checks and cover letters, if any, will be sent simultaneously to WAP and its counsel. This payment

6   is in addition to the $40,000 to be paid by Hos Bros. and the $50,000 to be paid by Flatiron to the

7   Rose Foundation under each party's separate settlement agreement.

8       12.     Within thirty (30) days after entry of this Consent Decree, SMV will pay $76,000

9   (SEVENTY-SIX THOUSAND DOLLARS) and Merrill & Ring will pay $15,000 (FIFTEEN

10  THOUSAND DOLLARS) for settlement of WAP's litigation fees, expenses, and costs (including

11  reasonable attorney and expert witness fees) by check payable and mailed to Smith & Lowney,

12  PLLC, 2317 East John St., Seattle, WA 98112, attn: Richard Smith. This payment is in addition to

13  the $59,000 to be paid by Hos Bros. and the $49,000 to be paid by Flatiron under their separate

14  settlement agreements. Defendants' payment will be in full and complete satisfaction of any claims

15  WAP has or may have, either legal or equitable, and of any kind or nature whatsoever, for fees,

16  expenses, and costs incurred relating to this action, including attorneys' fees and costs.

17      13.     A force majeure event is any event outside Defendants' reasonable control that

18  causes a delay in performing a task required by this Consent Decree that cannot be cured by due

19  diligence. Defendants will notify WAP of the occurrence of a force majeure event as soon as

20  reasonably possible but, in any case, no later than fifteen (15) days after Defendants become aware

21  of the event. The notice will describe the event, explain its consequences, and state the measures

22  that Defendants are taking or will be taking to remedy the delay. Provided that timely notice is

23

[PROPOSED] CONSENT DECREE
No. 2:21-cv-00240-MJP
10

SMITH & LOWNEY, PLLC
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

given to WAP, the time for performance of the task will be extended for a reasonable period of time following the force majeure event. In the event of a major area-wide catastrophic event (e.g., major earthquake, meteor strike, violent nationwide insurrection, nuclear war) the time for Defendants to provide notice of the event will be extended to thirty (30) days after Defendants become aware of the event. By way of example and not limitation, force majeure events include

a.   Acts of God, war, insurrection, or civil disturbance;

b.   Earthquakes, landslides, fire, floods;

c.   Actions or inactions of third parties over which Defendants have no control;

d.   Unusually adverse weather conditions;

e.   Restraint by court order or order of public authority;

f.   Strikes;

g.   Any permit or other approval sought by Defendants from a government authority to implement any of the actions required by this Consent Decree where such approval is not granted or is delayed, and where Defendants have timely and in good faith sought the permit or approval;

h.   Litigation, arbitration, or mediation that causes delay; and

i.   COVID-19 or other pandemic related delays, including supply chain issues.

15.   This Court retains jurisdiction over this matter while this Consent Decree remains in force. While this Consent Decree remains in force, this case may be reopened without a filing fee so that the parties may apply to the Court for any further order that may be necessary to enforce compliance with this Consent Decree or to resolve any dispute regarding the terms or conditions of this Consent Decree. In the event of a dispute regarding implementation of, or compliance with,

[PROPOSED] CONSENT DECREE
No. 2:21-cv-00240-MJP
11

SMITH & LOWNEY, PLLC
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

1   this Consent Decree, the parties must first attempt to resolve the dispute by meeting to discuss the

2   dispute and any suggested measures for resolving the dispute. Such a meeting should be held as

3   soon as practical but must be held within thirty (30) days after notice of a request for such a meeting

4   to the other party and its counsel of record. If no resolution is reached at that meeting or within

5   thirty (30) days of the notice, either party may file a motion with this Court to resolve the dispute.

6   The provisions of section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), regarding awards of

7   costs of litigation (including reasonable attorney and expert witness fees and costs) to any prevailing

8   or substantially prevailing party, will apply to any proceedings seeking to enforce the terms and

9   conditions of this Consent Decree.

10       16.    The parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment

11   can be entered in a Clean Water Act suit in which the United States is not a party prior to forty-five

12   (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney

13   General and the Administrator of the U.S. EPA. Therefore, upon the filing of this Consent Decree

14   by the parties, WAP will serve copies of it upon the Administrator of the U.S. EPA and the U.S.

15   Attorney General.

16       17.    This Consent Decree will take effect upon entry by this Court. This Consent Decree

17   terminates five (5) years after that date, except for the requirements of Section 8, which do not

18   expire.

19       18.    The parties have participated in drafting this Consent Decree.

20       19.    This Consent Decree, together with the Hos Bros. and Flatiron settlement

21   agreements, constitutes the entire agreement between the parties. There are no other or further

22   agreements, either written or verbal. This Consent Decree may be modified only upon a writing

23

[PROPOSED] CONSENT DECREE
No. 2:21-cv-00240-MJP
12

SMITH & LOWNEY, PLLC
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

1   signed by all parties and the approval of the Court.

2       20.    If for any reason the Court should decline to approve this Consent Decree in the

3   form presented, this Consent Decree is voidable at the discretion of any party. The parties agree to

4   continue negotiations in good faith to cure any objection raised by the Court to entry of this Consent

5   Decree.

6       21.    Notifications required by this Consent Decree must be in writing. For a notice or

7   other communication regarding this Consent Decree to be valid, it must be delivered to the receiving

8   party at the email addresses listed below or to any other email address designated by the receiving

9   party in a notice in accordance with this Section 21.

10  **If to WAP:**

11  Greg Wingard at gwingard@earthlink.net and gregwap@earthlink.net

12  **And to**:

13  Richard Smith at Richard@smithandlowney.com
    Marc Zemel at Marc@smithandlowney.com

14  **If to SMV:**

15  Stephen Rimmer at steve.rimmer@dirtfish.com

16  **And to**:

17  Howard Jensen at howard@verislawgroup.com
    Hannah Solomon at hannah@verislawgroup.com

18  **If to Flatiron:**

19  Brandy Falkevitch at bfalkevitch@flatironcorp.com

20  **And to**:

21  John D. Fognani at john.fognani@haynesboone.com
    Kathleen Repko at kathleen.repko@haynesboone.com

22  **If to Hos Bros.:**

23  Russel Proctor at russellp@hosbros.com

[PROPOSED] CONSENT DECREE
No. 2:21-cv-00240-MJP
13

SMITH & LOWNEY, PLLC
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

**And to**:

Jeffrey G. Frank at jfrank@buchalter.com

**If to Merrill & Ring:**

David Stroble at dave@merrillring.com

**And to**:

Mark Peternell at mpeternell@bgwp.net

**If to DirtFish:**

Stephen Rimmer at steve.rimmer@dirtfish.com

**And to**:

Howard Jensen at howard@verislawgroup.com
Hannah Solomon at hannah@verislawgroup.com

**If to Brookwater:**

Tom Sroufe at tom@bwanw.com

**And to**:

Howard Jensen at howard@verislawgroup.com
Hannah Solomon at hannah@verislawgroup.com

**If to Rimmer:**

Howard Jensen at howard@verislawgroup.com
Hannah Solomon at hannah@verislawgroup.com

**If to Sroufe:**

Howard Jensen at howard@verislawgroup.com
Hannah Solomon at hannah@verislawgroup.com

A notice or other communication regarding this Consent Decree will be effective when received unless the notice or other communication is received after 5:00 p.m. on a business day, or on a day that is not a business day, then the notice will be deemed received at 9:00 a.m. on the next business day. A notice or other communication will be deemed to have been received on the day it

[PROPOSED] CONSENT DECREE
No. 2:21-cv-00240-MJP
14

SMITH & LOWNEY, PLLC
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

1   is sent by email to the addresses identified above or any additional or different address designated

2   by a party.

3      DATED this **26** day of **Oct.**_____, 2022.

4

5

6      HON. JUDGE MARSHA J. PECHMAN
       UNITED STATES DISTRICT JUDGE

7

8   Presented by:

9

    VERIS LAW GROUP PLLC                      SMITH & LOWNEY, PLLC

10
    By s/ Howard F. Jensen_____           By s/ Richard A. Smith_____
11  Howard F. Jensen, WSBA #25144            Richard A. Smith, WSBA #21788
    By s/ Hannah M. Solomon_____          By s/ Marc Zemel_____
12  Hannah M. Solomon, WSBA #56474           Marc Zemel, WSBA #44325
    *Attorneys for Snoqualmie Mill Ventures* *Attorneys for Waste Action Project*
13  *LLC, Stephen Rimmer, Brookwater*
    *Advisors LLC, Thomas Sroufe, Dirtfish*
14  *LLC, and Merrill & Ring Forest Products*
    *L.P.*
15
    HAYNES AND BOONE, LLP                     BUCHALTER
16
    By s/ John D. Fognani_____            By s/ Jeffrey G. Frank_____
17  John D. Fognani, *pro hac vice*          Jeffrey G. Frank, WSBA #16287
    By s/ Kathleen M. Repko_____          By s/ David C. Spellman_____
18  Kathleen M. Repko, *pro hac vice*        David C. Spellman, WSBA #15884
    *Attorneys for Flatiron West, Inc.*      By s/ Jennifer R. Oswald_____
19                                           Jennifer R. Oswald, WSBA #43253
    GROFF MURPHY PLLC                        *Attorneys for Hos Brothers Construction, Inc.*
20
    By s/ Michael P. Grace_____
21  Michael P. Grace, WSBA #26091
    By s/ Emily A. Yoshiwara_____
22  Emily A. Yoshiwara, WSBA #54648
    *Attorneys for Flatiron West, Inc.*
23

    [PROPOSED] CONSENT DECREE                 **SMITH & LOWNEY, PLLC**
    No. 2:21-cv-00240-MJP                     **2317 EAST JOHN ST.**
    15                                        **SEATTLE, WASHINGTON 98112**
                                              **(206) 860-2883**

# EXHIBIT A

## SETTLEMENT AGREEMENT, RELEASE OF CLAIMS
## AND COVENANT NOT TO SUE

### I. RECITALS

1.     Waste Action Project ("WAP") issued a notice of intent to sue for violations of the Clean Water Act, alleging that Hos Bros Construction Inc. ("Hos Bros")  is in violation of Section 301(a) of the Act for the unpermitted discharge of pollutants from its yard at the Snoqualmie Mill Site that it leases from Snoqualmie Mill Ventures. WAP filed a lawsuit on this claim in the Western District of Washington, as case no. 21-240MJP.

2.     The parties and their counsel have engaged in discussions relating to the settlement of this matter and wish to resolve it without further litigation.

3.     By entering into this agreement, Hos Bros does not admit and expressly denies liability for all claims alleged by WAP in WD Wash. No. 21-240MJP.

4.     The parties have agreed that settlement of this matter is in the best interest of the parties, and that entry into this agreement is the most appropriate means of resolving this dispute.

5.     WAP and Hos Bros have entered into this Settlement Agreement, Release of Claims, And Covenant Not To Sue ("Settlement Agreement") without further litigation, trial adjudication, or admission of any issue of fact or law.

### II. BINDING EFFECT

1.     The provisions of this Settlement Agreement shall inure to the benefit of and be binding upon the parties hereto, including their officials, agents, representatives, officers, directors, employees, successors, and assigns.  Changes in the organizational form or status of a party shall have no effect on the binding nature of this Settlement Agreement or its applicability.

2.     This Settlement Agreement shall apply to Hos Bros's operation of the stormwater facilities, management, and discharges at its Snoqualmie Mill Site facility.  This Settlement Agreement has no bearing, and does not apply to other facilities owned or operated by Hos Bros.

1

### III.  COMPLIANCE-RELATED MEASURES

1.       Hos Bros will use best efforts to fully implement and abide by the provisions of

the Stormwater Pollution Prevention Plan ("SWPPP") developed and implemented by

Snoqualmie Mill Ventures, including implementation of best management practices and prompt

communication with Snoqualmie Mill Ventures about any operational or other facility changes

that may affect the provisions of the SWPPP.  Hos Bros agrees to cooperate in good faith with

Snoqualmie Mill Ventures in its efforts to comply with the National Pollutant Discharge

Elimination System permit issued by the Department of Ecology to Snoqualmie Mill Ventures

for discharges from the Snoqualmie Mill Site, but takes no independent responsibility for

Snoqualmie Mills Ventures or any other party to this litigation.

### IV.  MITIGATION

Within thirty (30) calendar days of full execution of this Settlement Agreement, Hos Bros

will make a payment in the amount of $40,000 to the Rose Foundation for projects related to

improving the water quality of the Snoqualmie River watershed and associated waters of Puget

Sound, which is described in Attachment A to this Settlement Agreement.  Hos Bros will mail a

copy of the check by which this payment is made to WAP.

Hos Bros may not make any public statement taking credit for this payment without

explicitly recognizing the circumstance of this settlement and WAP's notice of intent to sue.

Hos Bros may not consider the payment to be a charitable contribution for tax accounting

purposes.

2

## V.  ATTORNEYS' FEES AND COSTS

Within thirty (30) calendar days of full execution of this Settlement Agreement, Hos

Bros's will pay WAP's attorneys' fees and costs in the reasonable amount of $59,000 for fees

and costs actually expended in this matter.  Such payment shall be made payable and sent to

Smith & Lowney, PLLC, 2317 East John St., Seattle, WA 98112, attn: Richard A. Smith.

## VI.    DISMISSAL

Within seven business days of the effective date of this Settlement Agreement, WAP will

voluntarily dismiss with prejudice its claims against Hos Bros in W.D. Wash. No. 21-240MJP.

## VII.  EFFECT OF SETTLEMENT AGREEMENT

1.      The undersigned representative for each party certifies that he is fully authorized

by the party he represents to enter into this Settlement Agreement and to legally bind such party

and its successors in interest to it.

2.      Each party hereto reserves all legal and equitable remedies available to enforce

this Settlement Agreement, which the parties intend to constitute a legally binding contract, and

each party reserves the right to assert any defenses to any subsequent actions or remedies sought

by the other party to enforce this Settlement Agreement in the future.  In any action to enforce

the terms of this Settlement Agreement, the prevailing party shall be entitled to recover

reasonable costs and attorneys' fees incurred in bringing and maintaining or defending such

enforcement action unless manifest injustice would result.  Not less than thirty (30) calendar

days before bringing any such action, or sixty (60) calendar days if the matter relates to

compliance with the Permit, the aggrieved party shall provide written notice to the other party of

the dispute and the parties or their counsel shall endeavor to confer to discuss means to resolve

such dispute.

3

3.      This Settlement Agreement is intended to be and shall constitute the exclusive

remedy and final resolution between the parties and their respective officials, agents,

representatives, officers, directors, employees, successors and assigns for any claim, demand or

cause of action arising under the Clean Water Act in relationship to stormwater discharges from

the Hos Bros's Snoqualmie Mill Site facility, whether known or unknown, asserted or

unasserted, which accrued at any time prior to the effective date of this Settlement Agreement.

4.      In further consideration of the commitments and agreements that Hos Bros's has

made herein, WAP hereby releases and covenants not to sue Hos Bros's and its officials, agents,

representatives, officers, directors, employees, successors and assigns for any claim, demand or

cause of action arising under the Clean Water Act concerning stormwater and wastewater

discharges from the Hos Bros's Snoqualmie Mill Site facility, whether known or unknown,

asserted or unasserted, which accrued at any time prior to the effective date of this Settlement

Agreement.  This release and covenant not to sue specifically includes, but is not limited to,

claims or civil penalties, attorneys' fees and costs, and declaratory or injunctive relief.

5.      This Settlement Agreement shall not constitute an admission or adjudication with

respect to any allegation in W.D. Wash. No. 21-240MJP, or an admission or evidence of any

violation, negligence, wrongdoing, misconduct or liability on the part of Hos Bros or any of its

officials, agents, representatives, officers, directors, employees, successors and assigns.  This

Settlement Agreement shall not constitute or be deemed to constitute an admission or

adjudication with respect to any allegation, fact or conclusion of law at issue in W.D. Wash. No.

21-240MJP.

4

## VII.  MODIFICATION

This Settlement Agreement may be modified only with the written consent of WAP and

Hos Bros.

## VIII.  EFFECTIVE DATE

This Settlement Agreement shall take effect upon full execution by the parties.

## IX.  NOTIFICATIONS

Notifications and documents required to be provided to WAP will be directed to

Greg Wingard
Waste Action Project
P.O. Box 4832
Seattle, WA 98104
gwap@earthlink.net

Notifications required to be provided to Hos Bros. will be directed to

Russell Proctor
Hos Bros Construction, Inc.
PO Box 1788
Woodinville, WA  98072-1788
russellp@hosbros.com

## X.  ENTIRE AGREEMENT

This Settlement Agreement constitutes the entire agreement between the parties.  There

are no other or further agreements, either written or verbal, except as expressly contained herein.

Both parties are co-drafters of this Settlement Agreement.  If a court determines that this

Settlement Agreement is ambiguous and/or that one party was the primary drafter of this

Settlement Agreement, the court shall not construe this Settlement Agreement against the

primary drafter on that basis.

This Settlement Agreement may be executed in two or more counterparts, each of which

shall be deemed an original, but all of which together constitute one and the same Settlement

Agreement.

## XI.  TERMINATION

This Settlement Agreement and all obligations under it, except for WAP's release and

waiver of claims, shall terminate upon Hos Bros vacation of its Snoqualmie Mill Site facility or

on December 31, 2026, whichever is earlier.

## XII.  COUNTERPARTS

This Settlement Agreement may be executed in two or more counterparts, each of which

shall be deemed an original, but all of which together constitute one and the same Settlement

Agreement.

WASTE ACTION PROJECT


By: _____          Date: ___6/10/2022___
     Greg Wingard, Executive Director


HOS BROS CONSTRUCTION, INC.

By: _____          Date: _6-13-2022_
     John Caunt, President

6

ROSE
FOUNDATION
for COMMUNITIES
and the ENVIRONMENT

WWW.ROSEFDN.ORG

201 4TH STREET, SUITE 102, OAKLAND, CA 94607
ROSE@ROSEFDN.ORG

OFFICE: 510.658.0702
FAX: 510.658.0732

June 8, 2022

Greg Wingard
Waste Action Project
P.O. Box 4832
Seattle, WA 98104
Email: gwingard@earthlink.net

Russell Proctor
Hos Brothers Contruction, Inc.
P.O. Box 1788
Woodinville, WA 98072-1788
Email: russellp@hosbros.com

Re: Waste Action Project. v. Hos Brothers Construction, Inc. (Case # 21:240MJP)

Dear Messrs. Wingard and Proctor,

This letter is intended to provide assurance that I have received the Settlement Agreement between Waste Action Project and Hos Brothers Construction, Inc. (Hos Bros.), and that I am authorized by my Board of Directors to make the following binding commitments on behalf of the Rose Foundation.

1) I understand that the Rose Foundation should receive funds from Hos Bros. as specified in the Settlement Agreement.
2) The Rose Foundation shall only use these funds to support projects related to improving the water quality of the Snoqualmie River watershed and associated waters of Puget Sound.
3) Due to the disproportionate impact of pollution (from facilities such Hos Bros.) to low-income neighborhoods and communities of color, in selecting grantees the Rose Foundation shall prioritize projects which benefit vulnerable populations in that area and associated reaches of South Sound.
4) After the funds have been disbursed, the Rose Foundation shall send a report to the Parties setting forth the recipient and purpose of the funds and demonstrating conformance with the nexus of the settlement agreement language above.

**Rose Foundation for Communities and the Environment**
The Rose Foundation is a 501(c)(3) public charity (tax ID#94-3179772). Its mission is to support grassroots initiatives to inspire community action to protect the environment, consumers and public health. To fulfill this mission, the Rose Foundation conducts the following activities:

- Raise money to award as grants to qualified non-profit organizations conducting charitable operations. The Foundation does not support political lobbying activities prohibited by Section 501(c)(3) of the IRS Code, and no portion of the Hos Bros. funds shall be used to support any political lobbying activities whatsoever.

- Work directly in schools and in the community to encourage environmental stewardship and civic participation.
- Help government efforts to control pollution and protect the environment by encouraging community engagement in local, state and federal research and policy development.

Within this broad range of activities, all of the Rose Foundation's work revolves around one or more of the following strategic themes:

- Build and maintain a bridge between the community and organized philanthropy.
- Protect the natural environment, public health, and community and consumer rights.
- Promote collaboration between labor, environmental, business, consumer and social interests.
- Cultivate a new generation of environmental stewards and social policy leaders.
- Respect the inalienable rights protected by our nation's constitution, and the essential human rights to clean air, clean water, and individual dignity and privacy.

The Rose Foundation is governed by a Board of Directors.  Grant applicants are required to submit written proposals, which must include at a minimum specific information about the goals, activities and projected outcomes of the proposed project, background about the charitable applicant, budget information, and a specific funding request. The Foundation may require additional information to fully evaluate the application. Applications are first screened by Foundation staff. Staff then make recommendations to the Foundation Board for action. The Foundation requires all projects to submit written reports within one year of receipt of the grant award describing work conducted under the grant, thereby providing an accountability mechanism over funds awarded. Annual audits by the certified public accounting firm Maze and Associates are posted on the Foundation's website www.rosefdn.org.

I hope this provides you with the information you require. Please do not hesitate to contact me with any questions or for additional information at (510) 658-0702 or tlittle@rosefdn.org.

Sincerely,

Tim Little, Executive Director

# EXHIBIT B

## SETTLEMENT AGREEMENT, RELEASE OF CLAIMS
## AND COVENANT NOT TO SUE

### I. RECITALS

1.      Waste Action Project ("WAP") issued a notice of intent to sue for violations of the Clean Water Act, alleging that Flatiron West, Inc. ("Flatiron") is in violation of Section 301(a) of the Act for the unpermitted discharge of pollutants from its yard at the Snoqualmie Mill Site (the "Site") that it leases from Snoqualmie Mill Ventures. WAP filed a lawsuit on this claim in the Western District of Washington, as Case No. 21-240MJP.

2.      The parties and their counsel have engaged in discussions relating to the settlement of this matter and wish to resolve it without further litigation.

3.      By entering into this Settlement Agreement, Release of Claims and Covenant Not To Sue ("Settlement Agreement"), Flatiron does not admit and expressly denies liability for any and all claims alleged by WAP in Western District of Washington Case No. 21-240MJP.

4.      The parties have agreed that settlement of this matter is in the best interest of the parties, and that entry into this agreement is the most appropriate means of resolving this dispute.

5.      WAP and Flatiron have entered into this Settlement Agreement without further litigation, trial adjudication, or admission of any issue of fact or law.

### II. BINDING EFFECT

1.      The provisions of this Settlement Agreement shall inure to the benefit of and be binding upon the parties hereto, including their officials, agents, representatives, officers, directors, employees, successors, and assigns. Changes in the organizational form or status of a party shall have no effect on the binding nature of this Settlement Agreement or its applicability.

1

2.      This Settlement Agreement shall apply to Flatiron's stormwater discharges, if any, at its Snoqualmie Mill Site facility.  This Settlement Agreement has no bearing on and does not apply to other facilities owned or operated by Flatiron

### III. COMPLIANCE-RELATED MEASURES

1.      Flatiron will use best efforts, while it remains a tenant at the Site, to fully implement and abide by the provisions of the Stormwater Pollution Prevention Plan ("SWPPP") developed and implemented by Snoqualmie Mill Ventures, including implementation of best management practices and prompt communication with Snoqualmie Mill Ventures about any operational or other facility changes that affect the provisions of the SWPPP.  Flatiron further agrees, while it remains a tenant at the Site, to cooperate in good faith with Snoqualmie Mill Ventures in its efforts to comply with the National Pollutant Discharge Elimination System permit issued by the Department of Ecology to Snoqualmie Mill Ventures for discharges from the Site attributed to Flatiron, if any, but takes or assumes no independent responsibility for Snoqualmie Mills Ventures or any other party to this litigation or any future renter at the Site.

### IV. MITIGATION

Within thirty (30) calendar days of full execution of this Settlement Agreement, Flatiron will make a payment in the amount of $50,000 to the Rose Foundation, or to any other entity selected and approved by the parties, for projects related to improving the water quality of the Snoqualmie River watershed and associated waters of Puget Sound. The Rose Foundation project is described in Attachment A to this Settlement Agreement.  Flatiron will mail a copy of the check by which this payment is made to WAP at the P.O. Box 4832 for Greg Wingard as provided below.

2

Flatiron may not make any public statement taking credit for this payment without explicitly recognizing the circumstance of this settlement and WAP's notice of intent to sue. Flatiron may not consider the payment to be a charitable contribution for tax accounting purposes.

## V. ATTORNEYS' FEES AND COSTS

Within thirty (30) calendar days of full execution of this Settlement Agreement, Flatiron's will pay WAP's outside attorneys' fees and costs in the reasonable amount of $49,000 for fees and costs actually expended in this matter. Such payment shall be made payable and sent to Smith & Lowney, PLLC, 2317 East John St., Seattle, WA 98112, attn: Richard A. Smith.

## VI.    DISMISSAL

Within seven business days of the effective date of this Settlement Agreement, WAP will move to voluntarily dismiss with prejudice its claims against Flatiron in W.D. Washington Case No. 21-240MJP.

## VII. EFFECT OF SETTLEMENT AGREEMENT

1.    The undersigned representative for each party certifies that he/she is fully authorized by the party he/she represents to enter into this Settlement Agreement and to legally bind such party and its successors in interest.

2.    Each party hereto reserves all legal and equitable remedies available to enforce this Settlement Agreement, which the parties intend to constitute a legally binding contract, and each party reserves the right to assert any defenses to any subsequent actions or remedies sought by the other party to enforce this Settlement Agreement in the future. In any action to enforce the terms of this Settlement Agreement, the prevailing party shall be entitled to recover reasonable costs and attorneys' fees incurred in bringing and maintaining or defending such

3

enforcement action unless manifest injustice would result.  Not less than thirty (30) calendar days before bringing any such action, or sixty (60) calendar days if the matter relates to compliance with the Permit, the aggrieved party shall provide written notice to the other party of the dispute and the parties or their counsel shall endeavor to confer to discuss means to resolve such dispute without resort to litigation.

3.      This Settlement Agreement is intended to be and shall constitute the exclusive remedy and final resolution between the parties and their respective officials, agents, representatives, officers, directors, employees, successors and assigns for any claim, demand or cause of action arising under the Clean Water Act in relationship to stormwater discharges from Flatiron's Snoqualmie Mill Site facility, whether known or unknown, asserted or unasserted, which accrued at any time prior to the effective date of this Settlement Agreement.

4.      In further consideration of the commitments and agreements that Flatiron's has made herein, WAP hereby releases and covenants not to sue Flatiron and its officials, agents, representatives, officers, directors, employees, successors and assigns for any claim, demand or cause of action arising under the Clean Water Act concerning stormwater and wastewater discharges from Flatiron's Snoqualmie Mill Site facility, whether known or unknown, asserted or unasserted, which accrued at any time prior to the effective date of this Settlement Agreement. This release and covenant not to sue specifically includes, but is not limited to, claims or civil penalties, attorneys' fees and costs, and declaratory or injunctive relief.

5.      This Settlement Agreement shall not constitute an admission or adjudication with respect to any allegation in W.D. Washington Case No. 21-240MJP, or an admission or evidence of any violation, negligence, wrongdoing, misconduct or liability on the part of Flatiron or any of its officials, agents, representatives, officers, directors, employees, successors and assigns.  This

Settlement Agreement shall not constitute or be deemed to constitute an admission or

adjudication with respect to any allegation, fact or conclusion of law at issue in W.D.

Washington Case No. 21-240MJP.

## VII. MODIFICATION

This Settlement Agreement may be modified only with the express written consent of

WAP and Flatiron.

## VIII. EFFECTIVE DATE

This Settlement Agreement shall take effect upon full execution by the parties.

## IX. NOTIFICATIONS

Notifications and documents required to be provided to WAP will be directed to

Greg Wingard
Waste Action Project
P.O. Box 4832
Seattle, WA 98104
gwap@earthlink.net

Notifications required to be provided to Flatiron will be directed to

Flatiron West, Inc.
Attn: Brandy Falkevitch
Associate Counsel
Flatiron West, Inc.
1400 Talbot Road South
Renton, WA 98055
bfalkevitch@flatironcorp.com

And

Haynes and Boone, LLP
Attn: John D. Fognani
        Kathleen M. Repko
1050 17th Street, Suite 1800
Denver, Colorado 80265
John.fognani@haynesboone.com
Kathleen.repko@haynesboone.com

5

## X.  ENTIRE AGREEMENT

This Settlement Agreement constitutes the entire agreement between the parties.  There are no other or further agreements, either written or verbal, except as expressly contained herein. Both parties are co-drafters of this Settlement Agreement.  If a court determines that this Settlement Agreement is ambiguous and/or that one party was the primary drafter of this Settlement Agreement, the court shall not construe this Settlement Agreement against the primary drafter on that basis alone.

## XI.  TERMINATION

This Settlement Agreement and all obligations under it, except for WAP's release and waiver of claims, shall terminate upon Flatiron's vacation of its Snoqualmie Mill Site facility or on December 31, 2026, whichever date first occurs.

## XII.  COUNTERPARTS

This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together constitute one and the same Settlement Agreement.

WASTE ACTION PROJECT

By: _Greg Wingard_                          Date: _7/15/2022_
Greg Wingard, Executive Director

FLATIRON WEST, INC.

By: _____                     Date: _7/19/22_
Dave Horn, VP District Manager

By: _____                     Date: _7/18/2022_
Neal Reagan, VP Division Finance

6



**ROSE FOUNDATION** for COMMUNITIES and the ENVIRONMENT

WWW.ROSEFDN.ORG

201 4TH STREET, SUITE 102, OAKLAND, CA 94607
ROSE@ROSEFDN.ORG

OFFICE: 510.658.0702
FAX: 510.658.0732

July 7, 2022

Peter McVeigh
United States Department of Justice
Environment & Natural Resources Division
Law and Policy Section
P.O. Box 7415
Washington, D.C. 20044-7415

Re: Waste Action Project. v. Flatiron West, Inc. (Case # 21:240MJP)

Dear Mr. McVeigh,

This letter is intended to provide assurance that I have received the Settlement Agreement between Waste Action Project and Flatiron West, Inc. (Flatiron), and that I am authorized by my Board of Directors to make the following binding commitments on behalf of the Rose Foundation.

1) I understand that the Rose Foundation should receive funds from Flatiron as specified in the Settlement Agreement.

2) The Rose Foundation shall only use these funds to support projects related to improving the water quality of the Snoqualmie River watershed and associated waters of Puget Sound.

3) Due to the disproportionate impact of pollution (from facilities such Flatiron) to low-income neighborhoods and communities of color, in selecting grantees the Rose Foundation shall prioritize projects which benefit vulnerable populations in that area and associated reaches of South Sound.

4) After the funds have been disbursed, the Rose Foundation shall send a report to the Parties setting forth the recipient and purpose of the funds and demonstrating conformance with the nexus of the settlement agreement language above.

**Rose Foundation for Communities and the Environment**
The Rose Foundation is a 501(c)(3) public charity (tax ID#94-3179772). Its mission is to support grassroots initiatives to inspire community action to protect the environment, consumers and public health. To fulfill this mission, the Rose Foundation conducts the following activities:

- Raise money to award as grants to qualified non-profit organizations conducting charitable operations. The Foundation does not support political lobbying activities prohibited by Section 501(c)(3) of the IRS Code, and no portion of the Hos Bros. funds shall be used to support any political lobbying activities whatsoever.

- Work directly in schools and in the community to encourage environmental stewardship and civic participation.
- Help government efforts to control pollution and protect the environment by encouraging community engagement in local, state and federal research and policy development.

Within this broad range of activities, all of the Rose Foundation's work revolves around one or more of the following strategic themes:

- Build and maintain a bridge between the community and organized philanthropy.
- Protect the natural environment, public health, and community and consumer rights.
- Promote collaboration between labor, environmental, business, consumer and social interests.
- Cultivate a new generation of environmental stewards and social policy leaders.
- Respect the inalienable rights protected by our nation's constitution, and the essential human rights to clean air, clean water, and individual dignity and privacy.

The Rose Foundation is governed by a Board of Directors. Grant applicants are required to submit written proposals, which must include at a minimum specific information about the goals, activities and projected outcomes of the proposed project, background about the charitable applicant, budget information, and a specific funding request. The Foundation may require additional information to fully evaluate the application. Applications are first screened by Foundation staff. Staff then make recommendations to the Foundation Board for action. The Foundation requires all projects to submit written reports within one year of receipt of the grant award describing work conducted under the grant, thereby providing an accountability mechanism over funds awarded. Annual audits by the certified public accounting firm Maze and Associates are posted on the Foundation's website www.rosefdn.org.

I hope this provides you with the information you require. Please do not hesitate to contact me with any questions or for additional information at (510) 658-0702 or tlittle@rosefdn.org.

Sincerely,

Tim Little, Executive Director

# EXHIBIT C



# Wild Fish Conservancy
### N O R T H W E S T

July 18, 2022

RE: Waste Action Project v. Snoqualmie Mill Ventures, W.D. Wash. No. 21-240MJP

To Whom It May Concern:

This letter is intended to provide assurance that I have reviewed the Consent Decree between Waste Action Project and Snoqualmie Mill Ventures (SMV) and its co-defendants and that I am authorized by my Board of Directors to make the following binding commitments on behalf of Wild Fish Conservancy (WFC):

1. I understand that WFC should receive $50,000 from SMV as specified in the Consent Decree.
2. WFC shall use the SMV funds working with partners wholly dedicated to environmentally beneficial projects which restore natural watershed processes and improve water quality of the Tolt Watershed, a significant tributary to the Snoqualmie River approximately 8 miles from the Snoqualmie Mill Site.
3. WFC and partners are performing a reach-scale physical and biological inventory and assessment of the North Fork Tolt, between 2022-2024, to identify, prioritize, and prepare conceptual designs for 3-4 habitat restoration and protection projects within the Snoqualmie Tribe Ancestral Forest.
4. With $20,000 of the funds WFC and partners will contract the University of Montana's Flathead Lake Biological Station to perform genetic analyses of salmonids within the Tolt watershed to discern the extent to which resident rainbow trout are contributing anadromous offspring. This information is critical to determine the effective distribution of Endangered Species Act-listed summer steelhead within the Snoqualmie watershed, a fundamental component of the Snoqualmie Tribe Ancestral Forest biological assessment.
5. WFC and partners will leverage the remaining $30,000 of the funds to prepare final designs and permits for one of the habitat restoration projects prioritized during the reach-scale assessment.
6. After funds have been disbursed, WFC shall send a report to the Justice Department, the Court and the Parties describing how the funds were utilized and demonstrating conformance with the nexus of the Consent Decree.

Wild Fish Conservancy is a 501(c)3 nonprofit conservation organization (Tax ID 91-1451405) headquartered in Washington State and dedicated to preserving, protecting and restoring the northwest's wild fish and the ecosystems they depend on, through science, education, and

advocacy. Our staff comprises 18 professional scientists, advocates, and educators, and our Board of Directors is represented by a group of dedicated and accomplished scientists, natural-resource managers, activists, and leading voices in the field of conservation ecology. Together, our staff and board's decades of experience in technical research, engineering, advocacy, and public education allow us to effectively address a broad range of complex issues facing wild fish— always with science as our compass.

None of the funds received will be used for lobbying or election activities. All will be within the scope of our allowed 501(c)(3) activities.

Wild Fish Conservancy is governed by a Board of Directors, and is committed to sound fiscal management. WFC contracts with an independent certified public accounting firm to conduct audits, and did so most recently during spring 2022. Please do not hesitate to contact me with questions or for additional information.

Emma Helverson, Executive Director
Wild Fish Conservancy
o: 425/788-1167
c: 484/788-1174
emma@wildfishconservancy.org